[See Case No. 17,289.]

SUMMERS (WATSON v.). See Case No. 17,-289.

## Case No. 13,606.

### The SUMMIT.

[2 Curt. 150.] [2]

Circuit Court, D. Massachusetts. Oct. Term, 1854,

COLLISION — RULES OF NAVIGATION — VESSELS ON FISHING GROUNDS.

1. The ordinary rules of navigation, designed to prevent collisions, are binding on fishing vessels, while engaged on their fishing grounds.

2. Damages denied for want of preponderating proof, in a great conflict of evidence.

[Cited in The Worthington & Davis, 19 Fed. 839; The Max Morris, 28 Fed. 884; The Alhambra, 33 Fed. 77.]

In admiralty.

Whiting & Russell, for appellants.

Mr. Scudder, contra.

CURTIS, Circuit Justice. This case has been held under advisement for some time, on account of the difficulty I have found in arriving at a judgment thereon. It is a cause of collision which occurred in the Bay of St. Lawrence between two fishing vessels called the Jubilee and the Summit, and by which the former with her fare, was destroyed. When the collision occurred, the Summit was sailing closehauled on the wind,

and had her larboard tacks aboard. The Jubilee had her larboard tacks aboard, and her sails set so as to lie close to the wind, but whether she was, and for some time before had been, sailing with the wind full, is the question of fact upon which there is an irreconcilable conflict of evidence. If both vessels were closehauled on the wind, it was the duty of the Summit, which was on the larboard tack, to give way and avoid the Jubilee. If the former was sailing close to the wind, and the Jubilee had the wind free, it was the duty of the Jubilee to keep clear of the Summit. These rules are applicable to fishing vessels, on their fishing grounds, and a deviation from them, producing a collision, must subject the vessel thus in the wrong to a claim for damages. It was stated by the counsel, that one reason why this appeal has been prosecuted is, that it is deemed important to obtain a decision of this court upon the question, whether the rules of navigation, designed to prevent collisions, are applicable to fishing vessels while sailing on their fishing grounds. It is said there is a difference of opinion among those engaged in this business, on this question; and that these rules are frequently disregarded. No reason has been assigned why they should not be applied to such vessels, when so engaged, and none has occurred to my mind. When it is remembered that, in pursuit of some kinds of fish, great numbers of vessels are frequently assembled in close proximity to each other, all in eager pursuit of their prey, and necessarily sailing in all conceivable relative courses, it is apparent there is unusual need of some suitable rules of navigation to avoid collisions. The ordinary rules have been found by experience to be the best and most convenient. I have no hesitation in declaring them to be applicable to fishing vessels, in common with all vessels, and when engaged on the fishing grounds as well as elsewhere. But it is necessary for the libellants to satisfy the court by preponderating evidence, that the facts existed which would impose on the Summit the duty of giving way to the Jubilee. It is not uncommon, in cases of collision, to find all on board one vessel, testifying differently upon material facts, from those on board the other vessel. But it is rare indeed that such a conflict of evidence exists, as I find in this case. This collision occurred within a few yards of another fishing vessel called the Shade, which was lying to, her hands being engaged in fishing, and within plain view of seven other fishing vessels, which were in different directions from the place of collision. Eleven persons who were on board those other vessels have been examined on behalf of the libellants, and ten in behalf of the claimants. They not only differ, but upon the most palpable and material points they flatly contradict each other. The witnesses for the libellant swear with positive-

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Reported by Hon. B. R. Curtis, Circuit Justice.]

ness, and assign reasons for, and means of knowledge of the correctness of the statement, that the wind was west south-west. Those of the claimants testify with equal positiveness, and upon reasons assigned and sworn to, that the wind was west north-west.

The libellant's witnesses say the Jubilee, for fifteen minutes before the collision, and down to the moment of the collision, had been sailing as close to the wind as she could lie. The claimants, that she had been sailing about three points free, until just before the collision, when she luffed up close to the wind, which brought her across the bow of the Summit and caused the collision.

I have read this voluminous evidence and compared it, with the hope that I might be able to come to some satisfactory conclusion, upon such leading facts as would be sufficient to determine the cause. I have also repeatedly examined, with much attention, the briefs of the evidence furnished by the counsel, and which, it is but just to them to say, evince not only a most attentive study of the proofs, but great ingenuity, and a thorough comprehension of the cause. It would occupy too much space to detail the evidence, or to place on paper the different aspects in which I have viewed it, and the different facts which seem to me entitled to weight, on the one side and on the other. And the result is, that I am not able to say that I think the libellant has made the fault of the Summit appear, by that preponderance of evidence necessary to charge that vessel with the damages arising from the collision.