## THE ALHAMBRA.

### THE RHODE ISLAND.

#### PROVIDENCE & STONINGTON S. S. Co. *v.* THE ALHAMBRA.

#### QUEBEC S. S. Co. *v.* THE RHODE ISLAND.

*(Circuit Court, S. D. New York.* October 11, 1887.)

COLLISION—CONFLICT OF EVIDENCE.

The side wheel steamer R., moving 15 knots, on a W. ¼ S. course, corrected compass, and the right-hand propeller A., with a speed of 9 knots, on a course E. by N., corrected compass, discovered each other, about 2 A. M., at a distance of about 3 miles, when 12 nautical miles to the eastward of the Stratford shoal light, Long Island sound. The night was fairly clear, the wind light, and the water smooth. Each steamer was on her regular route, and was in charge of skillful officers, familiar with the sound. Each had a competent lookout, in proper position, and each had all her regulation lights properly set and burning. The vessels came into collision at nearly right angles; the stem of the A. striking the port side of the R. amidships, just aft of the paddle-box. At the moment the R. was heading from one to three points west of north, and the A. from one to three points north of east. The testimony as to all the other material facts was in irreconcilable conflict. The theory of the A. was that the vessels were approaching each other showing lights, green to green, for five or six minutes, until the R., when so near that a collision was inevitable, changed her course to northward, across the bow of the A. Upon the theory of the R., the steamers were approaching each other, lights red to red, for six or seven minutes, until within half a minute of the collision, when the A. suddenly changed her course across the R.'s bow, rendering the accident unavoidable. These opposing theories were supported each by the same number of witnesses, and the witnesses appeared to be correspondingly intelligent, and to have had equal opportunities for observation. The only disinterested witness in the case, however, was a skillful navigator, who was a passenger on the A., and whose testimony was consistent, and made strongly against the R. In addition, the pleadings of the R. set out her theory of the collision generally, omitting evidential facts, while the statement of the A.'s theory in her pleadings were full and detailed. The witnesses of the R. testified in open court, while those of the A. did not; their testimony being read. The district court found for the A. in both cases, there being cross-bills. *Held,* on appeal, that the finding should be affirmed.

In Admiralty. On appeal from district court. 25 Fed. Rep. 846, affirmed.

*Wheeler H. Peckham,* for appellants.
*Thomas E. Stillman* and *Wilhemus Mynderse,* for appellees.

WALLACE, J. Cross-libels were filed by the respective owners of the steamers Rhode Island and Alhambra, to recover damages sustained by reason of a collision between the two steamers which occurred on Long Island sound, opposite New Haven, July 18, 1882, about 2 o'clock A. M. The causes were tried together in the district court. The district court decreed in favor of the owners of the Alhambra, and the owners of the Rhode Island have appealed.

The Alhambra left New York about 6 o'clock in the evening of July 18, 1882, bound for Halifax. She was engaged in the transportation of

passengers and cargo between the two ports, and her regular route was through Long Island sound. The Rhode Island left Providence on the same evening for New York. She was engaged in carrying passengers and cargo, and her regular route was through Long Island sound. The collision occurred about 12 nautical miles to the eastward of the Stratford shoal light. The Alhambra passed that light at 12:40 A. M., about three-fourths of a mile on the southerly side, taking a course E. by N., corrected compass. Her speed was about nine knots an hour. The Rhode Island passed Little Gull island at 11:52 P. M., passed Plum island, and shaped her course for Stratford shoal light on a W. ½ S. course, corrected compass. Her speed was about 15 knots an hour. While the steamers were upon these courses, respectively, they discovered each other at a distance of about three miles. The night was fairly clear, the wind was light, and the water was smooth. Each steamer was in charge of competent officers, who were familiar with the route. Each had a competent lookout, in proper position, and each had all her regulation lights properly set and burning. The navigation of the Alhambra was in charge of Mr. Dodd, her chief officer, who was on the bridge. With him on the bridge was Mr. Hayden, who intended to join the vessel as mate at Halifax, and whom Mr. Dodd was instructing respecting the lights on the shore. The wheel-house of the Alhambra was on the bridge, and a competent seaman was stationed at the wheel. The third engineer was in charge of the engine. The engine-room was connected with the bridge by telegraph. Upon the Rhode Island the quartermaster was at the wheel, and Mr. Dennis, a pilot, was with him in the pilot-house. The captain, Mr. Mott, was lying partially undressed on the lounge in his room which opened into the pilot-house, the door between being open. When the steamers first discovered each other, each was reported by the lookout of the other, and was observed by those in charge of her navigation. The Alhambra was a vessel of 220 feet in length. She had a right-hand propeller, and, when going at her usual speed, required about two minutes to reverse her engines and stop her headway after an order was given. The Rhode Island was a side-wheel steam-boat, 340 feet long. She turned very rapidly on her wheel, and would turn two and one-half points in the first 12 seconds, and more rapidly thereafter. When the steamers came into collision the Alhambra was heading from one to three points north of east, and the Rhode Island was heading from one to three points west of north. They collided at nearly right angles, the stem of the Alhambra coming into contact with the port side of the Rhode Island amid-ships, just aft of the paddle-box. Very serious injuries were sustained by each steamer.

Although the testimony establishes the foregoing facts, all the other material facts which enter into the decision of the case are involved in a conflict of testimony so grave and irreconcilable that it has seemed doubtful whether any satisfactory conclusion can be reached as to where the truth lies. The Alhambra's theory of the collision is that, being on an E. by N. course, corrected compass, she discovered the Rhode Island's red, green, and mast-head lights bearing about three-quarters of a

point on her starboard bow, and three miles away. The red light disappeared, leaving the Rhode Island's green light a little further on the Alhambra's starboard bow. The Alhambra starboarded half a point, so as to bring her course to E. by N. ⅓ N., and then steadied; that while on that course for several minutes the Rhode Island's green light continued to broaden on the Alhambra's starboard bow, until it bore about three points on the starboard bow; that then the Rhode Island, being not a quarter of a mile distant, suddenly shut out her green light, and exposed her red light, giving at the time one blast of the whistle; that immediately the Alhambra replied with one blast of the whistle, and the mate at the same time ordered her engines to be reversed; that the mate ordered the wheel to be ported, but before the order was executed he revoked it, reflecting that the engines were reversed, and gave the order to hard a-starboard the wheel, so as to cause the head of the vessel to fall to the port when her engines were reversed; and that the latter order was executed. The Rhode Island's theory of the collision is that, being on a W. ½ S. course, corrected compass, and heading for the Stratford shoal light, she saw the red and mast-head light of the Alhambra bearing about three-fourths of a point on her port bow, about three and one-half miles distant; that thereupon she gave one whistle, and ported five-eighths of a point, so as to bring her course to W. ⅓ N., corrected compass; that her signal of one whistle was immediately answered by one whistle from the Alhambra; that she steadied upon her course, and continued upon it, the Alhambra's red light being always on her port bow, without much change of bearing, until suddenly the Alhambra's green light was seen on the port beam, her red light being shut out, and apparently not one-fourth of a mile distant; whereupon the Rhode Island put her wheel hard a-port, but was unable to avoid a collision, and that the collision, occurred in six or eight seconds after the wheel was over. Upon the theory of the Alhambra the vessels were approaching each other showing lights green to green for five or six minutes, until the Rhode Island suddenly changed her course to northward, across the bow of the Alhambra, when so near as to render a collision inevitable. Upon the theory of the Rhode Island the steamers were approaching each other, lights red to red, for six or seven minutes, until within half a minute of the collision, when the Alhambra suddenly changed her course to northward, across the Rhode Island's bow, rendering the collision inevitable.

The testimony does not disclose a circumstance in the situation which furnishes a reasonable explanation why such a movement should have been thought of, much less attempted, on the part of either vessel. Thus each charges the other with a fault so inexplicable, so flagrant, and so suicidal that it is almost incredible that the competent seamen to whom it is attributed could have committed it. Such an accusation carries upon its face such evidence of improbability as to create a cogent presumption against its truth. *Res ipsa loquitur*. Neither party could expect to succeed in convicting his adversary of such an accusation, except upon the most convincing testimony. But the peculiarity of the case is that the accusation upon one side is met by a similar accusation

upon the other. Thus the improbabilities against the case of the one party are counterbalanced by those against the case of the other. The case of each vessel, as to the disputed facts, is supported by the same number of witnesses, and the witnesses for each seem to be correspondingly intelligent, and to have had equal opportunities for observation. As to the course of each vessel at the time she discovered the other, and the first change of course by each vessel immediately thereafter, the man at the wheel of each is measurably corroborated; the wheelsman of the Alhambra by her chief officer, and the wheelsman of the Rhode Island by the pilot. As to the distance the vessels were apart when each discovered the other, there is no conflict practically in the testimony; but as the distance is located wholly by the appearance of the lights of the vessel approaching, they may have been nearer to or further from each other than the witnesses state. As to the bearing of each vessel on the other when first discovered, when the first change of course was made by each, and when the alleged change was made immediately preceding the collision, the case for the Alhambra rests upon the testimony of the lookout, the chief officer, the mate, and Mr. Hayden, all of whom substantially agree in their narrative; and the case for the Rhode Island rests upon the testimony of the lookout, the quartermaster, and the pilot, who substantially agree in their narratives, and who are materially corroborated by Capt. Mott. Although Capt. Mott was not in the pilot-house when the lookout first reported the Alhambra, he testifies that he heard the exchange of signals between the two vessels, and he then proceeded leisurely to dress himself, and had finished doing so, when he heard the pilot say to the wheelsman: "That ship has shut her red light out, and is showing the green one; put the helm hard a-port;" and that he then stepped immediately into the pilot-house, and saw the Alhambra showing her green light on the port side of the Rhode Island, a trifle forward of a-beam, apparently about 300 feet away.

It is impossible to reconcile the testimony for the respective vessels respecting the location and maneuvers of each, after they first discovered each other, upon any theory consistent with the integrity of the witnesses. A mistake may exist on the one side or the other as to the exact course of the respective steamers when they first discovered each other, as to the change of course made shortly thereafter, as to the distance they were apart when this change, and the change just before the collision were made, and possibly as to the time when the signals were exchanged. But it is impossible that the witnesses for the Alhambra can be mistaken in supposing that they saw the green light of the Rhode Island for several minutes on the Alhambra's starboard bow, or for the witnesses for the Rhode Island to be mistaken in supposing that they saw the red light of the Alhambra on the Rhode Island's port bow for the same period, or for either to be mistaken in locating the other on the southward, and attributing to her the abrupt change to northward which produced the collision. There is no middle ground upon which the conflict in the testimony can be reconciled. One of the vessels was guilty of gross neglect in observing the movements of the other, and

made a sudden change of course in the confusion and excitement incident to discovering the situation, when the vessels were within a short distance of each other; or one seeing the other all the time, and mistaking her distance or rate of speed, attempted a movement across her bow for some reason which is only a matter of conjecture. Upon either hypothesis, those who were culpable of this gross breach of duty cannot vindicate themselves except by falsifying the facts.

No doubt is entertained that the testimony does not warrant a decree for damages in favor of the Rhode Island. In the most favorable view for her of which the case seems capable, the testimony for the Rhode Island does not overcome that for the Alhambra, and it can only be maintained that the testimony on both sides fails to disclose which vessel was in fault. In the number of the witnesses, in their apparent intelligence and opportunities for observation, in their truthfulness, so far as this can be ascertained from a critical examination of their testimony, and upon the probabilities which may fairly be indulged from facts which must be treated as established by the testimony, the case for the Alhambra fully meets and counterbalances the case for the Rhode Island. In cases of inscrutible fault, notwithstanding much opinion to the contrary, there should not be a division of damages; but, as was held by Judge Blatchford in *The Breeze*, 6 Ben. 14, it is only when the vessel sued is affirmatively and specifically held to be in fault, either solely or jointly with some other vessel, that she should be condemned in any damages. *The Grace Girdler*, 7 Wall. 196; *The Catherine of Dover*, 2 Hagg. 154; *The Maid of Auckland*, 6 Notes Cas. 240; *The Summit*, 2 Curt. 150. More doubt exists whether the testimony justifies a decree for damages for the Alhambra, and the conclusion reached upon this question has not been reached without some vacillation of opinion.

It is worthy of observation that the pleadings on the part of the Rhode Island, both the libel filed against the Alhambra, and the answer to the libel of the Alhambra's owners, set out the Rhode Island's theory of the collision with a generality of statement, omitting evidential facts, which contrasts unfavorably with the full and detailed statement contained in the pleadings for the Alhambra. It may be more artistic pleading to allege only the ultimate facts upon which the cause of action or the defense rests in an admiralty cause; but, when the controlling evidential facts which may be expected to be put in issue can be set forth without undue prolixity, it is prudent to do so, and tends to denote that the party is willing to make a complete disclosure of his case at the threshold of the controversy, which will preclude him from shifting his position to meet the case of the adversary.

If the witnesses for both parties had been produced upon the trial in the court below, and the decision of the district judge had been placed upon his opinion of their veracity, there would be no question but that the decree should be affirmed. To warrant a reversal upon a mere question of fact, when the court below has had an opportunity of seeing the witnesses, and observing their demeanor while giving testimony, the preponderance of the evidence should be somewhat decided. This is not

such a case.   The witnesses for the Rhode Island were produced and examined before the district judge upon the trial.    The witnesses for the Alhambra were not produced upon the trial, but their testimony, taken stenographically by question and answer, was read.    The district judge, therefore, had no opportunity to contrast their deportment with that of the witnesses for the Rhode Island.    But when the credibility of witnesses is in question it cannot be assumed that those who are examined orally upon the trial, if their appearance and manner of testifying is credible, are less likely to be believed than those who have no opportunity to impress their personality upon the court.    As has been stated, the case is one in which a decision in favor of one of the vessels necessarily implies that the witnesses for the other have fabricated their version of the facts.    The learned district judge was led to his conclusion by a course of reasoning which may or may not be accepted as convincing for present purposes; but the fact remains that it could not have been reached without discrediting the integrity of the witnesses for the Rhode Island. For this reason it should probably be held that this court ought to affirm the decision of the district court upon the ground that there is no such clear preponderance of evidence in favor of the appellants as would justify a reversal.    It is unnecessary, however, to place the present judgment upon this consideration.

A very careful examination of the testimony has led to the opinion, notwithstanding the extremely forcible argument of counsel for the appellants, that the decree of the court below was right.    The very able and careful opinion of the district judge proceeds upon the view that the narrative of the witnesses for the Rhode Island cannot be true, while that of the witnesses for the Alhambra is consistent, assuming as established that up to a short time before the collision the courses of each vessel were as stated by the witnesses for each, and that the first change made by each after discovering the other was about one-half point to the northward.    It is very uncertain whether the course immediately before each vessel discovered the other, or the first change of course made by each thereafter, is as stated by the witnesses for each.    Those who are responsible for the collision, and seek to escape responsibility by prevarication, can only hope to prevail by falsifying one or both of these antecedent facts.    For this reason the conclusion now reached is placed upon the ground that the witnesses for the Alhambra are believed to be more reliable and truthful than the witnesses for the Rhode Island.

It will not be profitable to enter upon a consideration of the evidence in detail.    It suffices to say (1) that the testimony of the pilot and wheelsman of the Rhode Island does not produce so favorable an impression of their candor as witnesses as does that of the chief officer and wheelsman of the Alhambra; the statements of the latter which are inconsistent with the general trend of their narratives, and which they would probably have concealed if they were untruthful, being to their credit; and (2) the Alhambra has produced the only witness in the cause who is not identified in interest, to a greater or less extent, with the vessel for whom he testified,—a witness whose impartiality, intelli-

gence, experience, and opportunity for observation entitles his statements to the utmost confidence, and whose testimony fully vindicates the Alhambra. Mr. Hayden was on the bridge and in the pilot-house of the Alhambra from 12 o'clock until the collision took place. He was on the Alhambra as a passenger, but was intending to join her as chief officer at the end of the trip up the sound, and on the occasion in question he was on the bridge for the purpose of being instructed by Mr. Dodd in the lights along the coast. He testifies that his attention was first attracted to the Rhode Island when the lookout reported her lights on the Alhambra's starboard bow. He describes the bearing of the lights from the time when both lights were visible on the starboard bow until the Rhode Island's red light was shut out, her green light seen to be broadening on the Alhambra's starboard bow, and the red then shown again as she was seen to be going across the Alhambra's bow just prior to the collision. He heard Mr. Dodd's order to port the wheel, and the countermand, and assisted the wheelsman in putting the helm hard a-starboard. He testifies that the order to port was not executed before the order to starboard was given, and that the order full speed astern was given before either of these orders was given, and when the Rhode Island, at a distance of about a quarter of a mile, shut out her green light, and was showing a red light on her course across the Alhambra's bow. The testimony of this witness was taken some six months after the collision occurred, and he was at the time in the employ of the Atlas Mail Line, as second officer of the steamship Alene, having been employed in the interval for three months on the Bermuda of the appellees' line of steamers, but having left their employment. His testimony is candid, clear, and convincing. While it differs in some details from the narratives of the other witnesses for the Alhambra, the differences are only such as are to be expected when witnesses are truthful, and is in all essentials consistent with and corroborative of their statements. He had no interest in vindicating those who were in charge of the Alhambra from the consequences of their own negligence, and there seems to be no reason why his sympathy should be enlisted in behalf of the vessel upon which he happened to be to an extent calculated to pervert his judgment, much less to lead him to falsify facts in reference to which it is almost inconceivable that he could be mistaken.

The testimony upon both sides leads to the decided opinion that the signals which were exchanged between the vessels were not exchanged when they first observed each other, according to the theory of the Rhode Island, but were exchanged at the time immediately preceding the collision, when the sudden change of course was made by one vessel to the northward across the bow of the other. It is wholly improbable that such signals would have been exchanged when the vessels were three miles apart, or even two miles apart, and the testimony of the Alhambra's lookout that, as soon as he saw the red light of the Rhode Island, he sang out to the mate to reverse the engines, and ran as fast as he could to escape danger, and that it was then that the Alhambra's whistle was given, is accepted as true. Under such circumstances, even if the erro-

neous signal of the Alhambra could be considered as contributing in any way to the disaster, it should be deemed a fault committed *in extremis*, and attributable to the confusion and excitement caused by the Rhode Island's sudden change of course.

The contention for the Rhode Island, that the Alhambra was off her regular course at the time the two vessels discovered each other, and the argment founded upon it, have not been overlooked, nor the suggestion that the Alhambra assumed the Rhode Island to be approaching her end on, and therefore ported her helm at the time she first discovered the Rhode Island or shortly after. It is possible that the change of course which she made soon after discovering the Rhode Island was a half point to the southward, instead of to the northward; thus bringing herself upon a converging line with the course of the Rhode Island. It is possible that the attention of the chief officer and wheelsman of the Alhambra was occupied and distracted from observation of the Rhode Island by Mr. Hayden's presence and conversation with him about lights and other subjects of interest. All these considerations have been weighed, as well those which are matters of legitimate argument as those which are merely matter of conjecture; but the conclusion is nevertheless reached that the preponderance of reliable testimony is in favor of the Alhambra, and that her witnesses have given an honest, and a substantially correct, version of what took place.

The decree in each case is affirmed, with interest, and with costs of the district court and of this court.